IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| SANFORD EDWARDS, | ) | |
| Plaintiff, | ) | Civil Action No. 12-1057 |
| | ) | |
| vs. | ) | Judge Terrence F. McVerry/ |
| | ) | Magistrate Judge Maureen P. Kelly |
| PATRICK M. DOUGHERTY, District | ) | |
| Attorney, Indiana County, | ) | Re: ECF No. 34 |
| Defendant. | ) | |

## REPORT AND RECOMMENDATION

**I.     RECOMMENDATION**

Plaintiff, Sanford Edwards ("Plaintiff"), is a prisoner in the custody of the Pennsylvania Department of Corrections and is currently incarcerated at the State Correctional Institution ("SCI") at Laurel Highlands. Plaintiff has presented a civil rights complaint in which he alleges that Defendant Patrick M. Dougherty ("Defendant"), District Attorney of Indiana County, Pennsylvania, has violated his constitutional rights by denying him access to biological evidence for DNA testing.

Presently before the Court is Defendant's Motion to Dismiss for Failure to State a Claim ("the Motion"). ECF No. 34. For the reasons that follow, it is respectfully recommended that the Motion be granted.

**II.     REPORT**

  **A.     FACTUAL AND PROCEDURAL BACKGROUND**

According to the Complaint, in August of 1979, Plaintiff was convicted in the Court of Common Pleas of Indiana County, Pennsylvania, of first degree murder in the death of Edith Morford and sentenced to life in prison. ECF No. 6, ¶ 6.

Plaintiff has represented, and Defendant does not dispute, that thereafter, on May 24, 2005, Plaintiff filed a motion for post-conviction DNA testing of hair samples found at the scene of the crime pursuant to the Pennsylvania Post-Conviction Relief Act ("PCRA"), 42 Pa. C.S.A. §§ 9541-9546. See ECF No. 52, p. 3. The trial court denied Plaintiff's motion on August 24, 2005, finding that the results would not serve to establish Plaintiff's actual innocence. Id. Plaintiff appealed to the Superior Court of Pennsylvania, which subsequently affirmed the trial court's decision. Id.

It also appears that on July 8, 2010, Plaintiff filed a motion requesting post-conviction DNA testing on blood collected at the crime scene, bed linens, the rape kit, fingernail scrapings and any fluids that had been collected. Id. at pp. 3-4. The motion was dismissed by the trial court on March 16, 2011. Id. at p. 4. On appeal, the Superior Court of Pennsylvania found that the law of the case prevented it from re-analyzing matters that had been previously ruled upon by the PCRA court in 2005 and 2010, and denied Plaintiff's appeal. Id. Plaintiff's subsequent Petition for Allowance of Appeal filed in the Supreme Court of Pennsylvania was denied on May 15, 2012. Id. at p. 5.

Plaintiff, proceeding *pro se,* initiated the instant case on July 27, 2012, by filing a Motion for Leave to Proceed In Forma Pauperis. ECF No. 1. Plaintiff was granted leave to proceed in forma pauperis on October 16, 2012, and the Complaint was filed on that same date. ECF Nos. 5, 6. In the Complaint, Plaintiff brings claims against Defendant for violating his rights provided by the Fifth and Fourteenth Amendments to the United States Constitution as well as Article I, Section I of the Pennsylvania Constitution relative to Defendant's refusal to grant relief under Section 9543.1 of the PCRA and allow DNA testing of the evidence recovered at the crime scene.

In November of 2012, shortly after the Complaint was filed, Plaintiff suffered a traumatic brain injury. Plaintiff had a craniotomy performed on December 2, 2013, and was subsequently transferred to SCI Laurel Highlands, where skilled nursing services are available. See ECF No. 52, p. 2. On February 14, 2013, Judge David C. Klementik, of the Court of Common Pleas of Somerset County, Pennsylvania, found Plaintiff "totally unable to communicate effectively" or "deal with day to day affairs" and appointed a plenary guardian to oversee Plaintiff's medical care. See ECF No. 41.

In the interim, on December 3, 2012, Defendant filed the instant Motion. ECF No. 34. Having subsequently been notified of Plaintiff's mental condition and his consequent inability to respond to the Motion, this Court appointed counsel as guardian *ad litem* to assess the allegations in Plaintiff's Complaint and file a response to the pending Motion on behalf of Plaintiff. ECF No. 42. Counsel for Plaintiff filed a Response to Motion to Dismiss on July 31, 2014. ECF No. 52. The Motion is now ripe for review.

**B.    STANDARD OF REVIEW**

In assessing the sufficiency of the complaint pursuant to a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), the Court must accept as true all material allegations in the complaint and all reasonable factual inferences must be viewed in the light most favorable to the plaintiff. Odd v. Malone, 538 F.3d 202, 205 (3d Cir. 2008). The Court, however, need not accept bald assertions or inferences drawn by the plaintiff if they are unsupported by the facts set forth in the complaint. See California Pub. Employees' Ret. Sys. v. The Chubb Corp., 394 F.3d 126, 143 (3d Cir. 2004), *citing* Morse v. Lower Merion Sch. Dist., 132 F.3d 902, 906 (3d Cir. 1997). Nor must the Court accept legal conclusions set forth as factual allegations. Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007). Rather, "[f]actual allegations must be enough to

raise a right to relief above the speculative level." Id., *citing* Papasan v. Allain, 478 U.S. 265, 286 (1986). Indeed, the United States Supreme Court has held that a complaint is properly dismissed under Fed. R. Civ. P. 12(b)(6) where it does not allege "enough facts to state a claim to relief that is plausible on its face," id. at 570, or where the factual content does not allow the court "to draw the reasonable inference that the defendant is liable for the misconduct alleged." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009). See Phillips v. Cnty. of Allegheny, 515 F.3d 224, 231 (3d Cir. 2008) (finding that, under Twombly, "labels, conclusions, and a formulaic recitation of the elements of a cause of action" do not suffice but, rather, the complaint "must allege facts suggestive of [the proscribed] conduct" and that are sufficient "to raise a reasonable expectation that discovery will reveal evidence of the necessary element[s] of his claim").

### C. DISCUSSION

Plaintiff has brought his claims pursuant to 42 U.S.C. § 1983 ("Section 1983"), which provides that:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress . . . .

42 U.S.C. § 1983. "Section 1983 provides remedies for deprivations of rights established in the Constitution or federal laws. It does not, by its own terms, create substantive rights." Kaucher v. Cnty. of Bucks, 455 F.3d 418, 423 (3d Cir. 2006), *citing* Baker v. McCollan, 443 U.S. 137, 145 n. 3 (1979) (footnote omitted). Thus, in order to state a claim for relief under Section 1983, the plaintiff must allege facts from which it could be inferred that "the defendant, acting under color of state law, deprived him or her of a right secured by the Constitution or the laws of the United

4

States." Id. at 423. In this case, Plaintiff alleges that, by denying him access to DNA testing, Defendant has violated his right to procedural due process provided by the Fourteenth Amendment to the Constitution.[1]

The Fourteenth Amendment provides that no State shall "deprive any person of life, liberty, or property, without due process of law." U.S. Const. Amend. XIV, § 1. To establish a claim under the Due Process Clause, a plaintiff must therefore show that he has a protected liberty or property interest of which he has been deprived, and that the process afforded him did not comport with constitutional requirements. Shoats v. Horn, 213 F.3d 140, 143 (3d Cir. 2000). With respect to the first inquiry, the United States Supreme Court has held that a criminal defendant who has been convicted of a crime has "a liberty interest in demonstrating his innocence with new evidence under state law." Dist. Attorney's Office for the Third Judicial Dist. v. Osborne, 557 U.S. 52, 68 (2009) ("Osborne"). In so finding, the Supreme Court also observed, however, that "[a] criminal defendant proved guilty after a fair trial does not have the same liberty interests as a free man," since "[g]iven a valid conviction the criminal defendant has been constitutionally deprived of his liberty." Id. at 69, *quoting* Connecticut Bd. of Pardons v. Dumschat, 452 U.S. 458, 464 (1981). Consequently, the Court found that:

> [t]he State accordingly has more flexibility in deciding what procedures are needed in the context of postconviction relief. "[W]hen a State chooses to offer help to those seeking relief from convictions," due process does not "dictat[e] the exact form such assistance must assume." *Pennsylvania v. Finley*, 481 U.S. 551, 559 . . . (1987). Osborne's right to due process is not parallel to a trial right, but rather must be analyzed in light of the fact that he has already been found guilty at a fair trial, and has only a limited interest in postconviction relief.

---

[1] To the extent that Plaintiff raises a substantive due process claim in the Complaint, he now concedes that he has no substantive due process right to DNA testing. See ECF No. 52, p. 7. In addition, Plaintiff has seemingly conceded that his claim brought pursuant to the Fifth Amendment is properly dismissed having failed to address Defendant's argument in this regard. Indeed, as argued by Defendant, the Fifth Amendment does not apply here as it pertains only to federal actors and not local actors like Defendant. See Watts v. Tretinik, 2008 WL 4279808, at *8 (W.D. Pa. Sept. 16, 2008).

5

> Instead, the question is whether consideration of Osborne's claim within the framework of the State's procedures for postconviction relief "offends some principle of justice so rooted in the traditions and conscience of our people as to be ranked as fundamental," or "transgresses any recognized principle of fundamental fairness in operation." *Medina v. California*, 505 U.S. 437, 446 . . . (1992) (internal quotation marks omitted); *see Herrera v.[Collins*, 506 U.S. 390], 407–408 [(1993)]. . . (applying *Medina* to postconviction relief for actual innocence); *Finley*, *supra*, at 556 . . . (postconviction relief procedures are constitutional if they "compor[t] with fundamental fairness").

Id. Thus, "[f]ederal courts may upset a State's postconviction relief procedures only if they are fundamentally inadequate to vindicate the substantive rights provided." Id.

At issue in Osborne, was the constitutionality of Alaska's post-conviction relief procedures, which provides for post-conviction relief "if the defendant presents newly discovered evidence that establishes by clear and convincing evidence that the defendant is innocent." Id. at 64, *quoting* Osborne I, 110 P.3d 986, 992 (Alaska Ct. App. 2005) (internal quotation marks omitted). With respect to DNA testing, the Supreme Court found that Alaska law provides "access to evidence ... for those to seek to subject it to newly available DNA testing that will prove them to be actually innocent." Id., *citing* Patterson v. State, 2006 WL 573797, at *4 (Alaska Ct. App. Mar. 8, 2006); Alaska Stat. §§ 12.72.010(4), 12.72.020(b)(2). The Supreme Court went on to find that there was --

> nothing inadequate about the procedures Alaska has provided to vindicate its state right to postconviction relief in general, and nothing inadequate about how those procedures apply to those who seek access to DNA evidence. Alaska provides a substantive right to be released on a sufficiently compelling showing of new evidence that establishes innocence. It exempts such claims from otherwise applicable time limits. The State provides for discovery in postconviction proceedings, and has—through judicial decision—specified that this discovery procedure is available to those seeking access to DNA evidence. *Patterson*, 2006 WL 573797, at *4.

Id. at 69-70. Accordingly, the Supreme Court held that Alaska's post-conviction relief

6

procedures relative to DNA testing "are not inconsistent with the 'traditions and conscience of our people' or with 'any recognized principle of fundamental fairness.'" Id. at 70, *quoting* Medina v. California, 505 U.S. 437, 446, 448 (1992) (internal quotation marks omitted).

Here, Defendant contends that Pennsylvania's post-conviction relief statute is fundamentally adequate as a matter of law and that Plaintiff therefore has failed to state a claim against him. Plaintiff, on the other hand, contends that Pennsylvania's post-conviction procedures regarding DNA testing are fundamentally unfair and thus unconstitutional. Specifically, Plaintiff finds fault with the threshold requirement that a criminal defendant seeking DNA testing establish a prima facie case of his or her "actual innocence" of the offense for which he or she was convicted.

Pennsylvania's post-conviction relief procedures relative to DNA testing are governed by the PCRA, which provides in pertinent part:

> **§ 9543.1. Postconviction DNA testing**
>
> **(a) Motion.—**
>
> (1) An individual convicted of a criminal offense in a court of this Commonwealth and serving a term of imprisonment or awaiting execution because of a sentence of death may apply by making a written motion to the sentencing court for the performance of forensic DNA testing on specific evidence that is related to the investigation or prosecution that resulted in the judgment of conviction.
>
> (2) The evidence may have been discovered either prior to or after the applicant's conviction. The evidence shall be available for testing as of the date of the motion. If the evidence was discovered prior to the applicant's conviction, the evidence shall not have been subject to the DNA testing requested because the technology for testing was not in existence at the time of the trial or the applicant's counsel did not seek testing at the time of the trial in a case where a verdict was rendered on or before January 1, 1995, or the applicant's counsel sought funds from the court to pay for the testing because his client was indigent and the court refused the request despite the client's indigency.

\* \* \*

**(c) Requirements.—In any motion under subsection (a), under penalty of perjury, the applicant shall:**

(1) (i) specify the evidence to be tested;

(ii) state that the applicant consents to provide samples of bodily fluid for use in the DNA testing; and

(iii) acknowledge that the applicant understands that, if the motion is granted, any data obtained from any DNA samples or test results may be entered into law enforcement databases, may be used in the investigation of other crimes and may be used as evidence against the applicant in other cases.

(2) (i) assert the applicant's actual innocence of the offense for which the applicant was convicted; and

\* \* \*

(3) present a prima facie case demonstrating that the:

(i) identity of or the participation in the crime by the perpetrator was at issue in the proceedings that resulted in the applicant's conviction and sentencing; and

(ii) DNA testing of the specific evidence, assuming exculpatory results, would establish:

(A) the applicant's actual innocence of the offense for which the applicant was convicted;
\* \* \*

**(d) Order.—**

(1) Except as provided in paragraph (2), the court shall order the testing requested in a motion under subsection (a) under reasonable conditions designed to preserve the integrity of the evidence and the testing process upon a determination, after review of the record of the applicant's trial, that the:

(i) requirements of subsection (c) have been met;

(ii) evidence to be tested has been subject to a chain of custody sufficient to establish that it has not been altered in any material respect; and

> (iii) motion is made in a timely manner and for the purpose of demonstrating the applicant's actual innocence and not to delay the execution of sentence or administration of justice.
>
> (2) The court shall not order the testing requested in a motion under subsection (a) if, after review of the record of the applicant's trial, the court determines that there is no reasonable possibility that the testing would produce exculpatory evidence that:
>
>> (i) would establish the applicant's actual innocence of the offense for which the applicant was convicted;
>
> * * *

42 Pa. C.S. § 9543.1. A petitioner seeking DNA testing is therefore required to file a motion requesting DNA testing, in which he or she has the initial burden of demonstrating a prima facie case that favorable results from the requested DNA testing would establish his or her innocence. See Wagner v. Dist. Attorney of Allegheny Cnty., 2012 WL 2090093, at *10 (W.D. Pa. May 21, 2012), *Report and Recommendation adopted by* 2012 WL 2089799 (W.D. Pa. June 8, 2012). See also 42 Pa. C.S. § 9543.1(c)(3)(ii)(A). Moreover, under the PCRA, the court is directed not to order DNA testing if it determines, after review of the trial record, that there is no reasonable possibility that the testing would produce exculpatory evidence to establish the petitioner's actual innocence. 42 Pa. C.S. § 9543.1(d)(2).

In this case, the undersigned discerns little to distinguish Pennsylvania's post-conviction requirements regarding DNA testing from those set forth in Alaska's post-conviction statutes at issue in Osborne, which the United States Supreme Court has found comports with due process. The PCRA, like the statute in Osborne, provides for DNA testing upon a showing that the new evidence would establish actual innocence. Osborne, 557 U.S. at 64. Thus, Osborne appears to preclude a finding that Pennsylvania's PCRA statute requiring a prima facie showing of actual innocence is unconstitutional.

9

Indeed, in Young v. Philadelphia Cnty. Dist. Attorney's Office, 341 F. App'x 843 (3d Cir. 2009), upon which Defendant relies, the United States Court of Appeals for the Third Circuit summarily rejected Young's argument that refusal to allow post-conviction DNA testing violated his due process rights. It also rejected Young's contention that Pennsylvania impermissibly prevented him from asserting actual innocence because he had confessed to the crimes charged finding, generally, that Pennsylvania's procedures for post-conviction relief neither "offend . . . 'some principle of justice so rooted in the traditions and conscience of our people to be ranked as fundamental,'" nor "transgress a 'recognized principle of fundamental fairness in operation.'" Id. at 845.

In Wagner v. Dist. Attorney of Allegheny Cnty., 2012 WL 2090093, upon which Defendant also relies, after an extensive discussion of the United States Supreme Court's opinion in Osborne and a recitation of Pennsylvania's PCRA, in which the Court emphasized sections 9543.1(c)(3) and 9543.1(d)(2), the Court stated "there can be no mistake that the burden lies with the petitioner to make a prima facie case that favorable results from the requested DNA testing would establish his innocence." 2012 WL 2090093, at *10, *citing* Commonwealth v. Williams, 35 A.3d 44, 49 (Pa. Super. 2011), and Commonwealth v. Smith, 889 A.2d 582, 584 (Pa. Super. 2005). Finding that Pennsylvania's DNA testing provisions contain similar requirements and limitations as that at issue in Osborne, *i.e.*, that the claimant make a sufficient showing that additional DNA testing could demonstrate his actual innocence, the Court concluded that Wagner failed to show that Pennsylvania's post-conviction statute offends due process. Id.[2]

---

[2] Plaintiff's attempts to distinguish Young and Wagner from the instant case are unavailing. Plaintiff argues that the issue in those cases was the constitutionality of requiring an inmate to *assert* actual innocence under section 9543.1(v)(2)(i), as opposed to *establishing* actual innocence under section 9543.1(c)(3)(ii)(A) which is at issue here. Although, in Young, the inmate had challenged the Commonwealth's refusal to allow him to assert his innocence because he had confessed to the crimes with which he was charged, the United States Court of Appeals for the Third Circuit nevertheless found that Pennsylvania's post-conviction procedures for DNA testing generally were fundamentally fair. Young, 341 F. App'x at 845. Moreover, in Wagner, contrary to Plaintiff's argument, the Court

10

Plaintiff nevertheless argues that the statute's threshold requirement of establishing actual innocence in order to gain access to DNA testing runs afoul of his right to due process because it is "insurmountable" and thus fundamentally unfair. Plaintiff challenges the statute both facially and as applied by Pennsylvania courts.

To support his position that the statute is constitutionally unfair on its face, Plaintiff initially points to the fact that to be otherwise eligible for post-conviction relief under the PCRA, a petitioner's burden of proof is only a preponderance of the evidence standard.

Indeed, under the PCRA, the filing of a motion seeking DNA testing is only the first step in the process relative to DNA testing. If the petitioner is successful at that step, and DNA testing is ordered by the court, the petitioner must then file a PCRA petition seeking relief pursuant to section 9543(a)(2)(vi), which pertains to newly discovered evidence. Specifically, section 9543(a)(2)(vi) provides that a criminal defendant is eligible for post-conviction relief if he can prove by a preponderance of the evidence, *inter alia*, that his conviction resulted in "[t]he unavailability at the time of trial of exculpatory evidence that has subsequently become available and would have changed the outcome of the trial if it had been introduced." 42 Pa. C.S. § 9543 (a)(2)(vi).

Plaintiff does not specifically argue why the higher burden at the first stage of the post-conviction proceedings is fundamentally unfair simply because a petitioner has a lesser burden at the second PCRA stage. Nor does the Court perceive any. See Commonwealth v. Williams, 35 A.2d at 51 ("[t]hough brought under the rubric of the PCRA, motions for post-conviction DNA testing are 'clearly separate and distinct from claims brought pursuant to other sections of the PCRA"). Moreover, the Court finds Plaintiff's argument that the threshold requirement of

---

addressed the requirement of having to establish actual innocence and not just having to assert it. Wagner, 2012 WL 2090093, at *10.

establishing actual innocence is insurmountable and that the proper standard should be that of reasonable probability unpersuasive -- particularly in light of Osborne. Plaintiff's argument focuses only on the language requiring a criminal defendant "to establish . . . actual innocence" and appears to ignore the language stating that he or she need only present a *prima facie* case that exculpatory results would establish actual innocence. 9543.1(c)(3)(ii)(A) (emphasis added).

To establish a prima facie case, one merely needs to produce "enough evidence to allow the fact-trier to infer the fact at issue" or establish a presumption that is subject to rebuttal. BLACK'S LAW DICTIONARY, 1382 (10th ed. 2014). Thus, under section 9543.1(c)(3)(ii)(A), a petitioner must only present enough evidence to permit the inference that exculpatory results would establish that the petitioner is innocent of the offense of which he or she was convicted. Moreover, the decision whether to order DNA testing ultimately lies with the court, which the statute directs not to order such testing when "there is no *reasonable probability* that the testing would produce exculpatory evidence." 9543.1(d)(2) (emphasis added). The standard, therefore, is less stringent than Plaintiff suggests and appears to mirror the reasonable probability standard that Plaintiff advocates.

Indeed, in Commonwealth v. Conway, 14 A.3d 101 (Pa. Super. 2011), to which Plaintiff cites as setting forth the appropriate standard, the Superior Court of Pennsylvania interpreted the portions of the post-conviction statute relative to DNA testing as follows:

> on its face, the prima facie requirement set forth in § 9543.1(c)(3) and reinforced in § 9543.1(d)(2) requires that an appellant demonstrate that there is a "reasonable possibility," that "favorable results of the requested DNA testing '*would establish*' the appellant's actual innocence of the crime of conviction." *Commonwealth v. Brooks, supra*, 875 A.2d at 1147, *quoting Commonwealth v. Heilman*, 867 A.2d 542, 546–547 (Pa.Super.2005), *appeal denied*, 583 Pa. 669, 876 A.2d 393 (2005) (emphasis in *Heilman*). The parties to this appeal agree, as did the trial court, that the definition of "actual innocence" that is to be applied in the evaluation of the effect of new evidence is that articulated by the United States Supreme Court in its

> Opinion in *Schlup v. Delo*, 513 U.S. 298, 327 . . . (1995), namely, that the newly discovered evidence must make it "more likely than not that no reasonable juror would have found him guilty beyond a reasonable doubt." Thus, this standard requires a reviewing court "to make a probabilistic determination about what reasonable, properly instructed jurors would do," if presented with the new evidence. *Id.*, 513 U.S. at 329 . . . .

Id. at 109. See also Commonwealth v. Williams, 35 A.3d at 49 (noting that under section 9543.1(c)(3) the court must determine "whether there is a reasonable possibility that DNA testing would produce exculpatory evidence that would establish petitioner's actual innocence"); Commonwealth v. Smith, 889 A.2d at 584 ("the court followed the mandate in 42 Pa. S.C.A. § 9543.1(c)(3) and (d)(2) to access Appellant's request for DNA testing in light of the trial record to see if there were a reasonable possibility that the testing would produce exculpatory evidence to establish Appellant's actual innocence"). Cf. Bousley v. United States, 523 U.S. 614, 623 (1998) (to establish actual innocence in the habeas context, "petitioner must demonstrate that in light of all the evidence, it is more likely than not that no reasonable juror would have convicted him") (internal quotations and citations omitted). The actual innocence requirement therefore is not as insurmountable as Plaintiff would have the Court find; it certainly is no more insurmountable than that found constitutional in Osborne.[3]

Plaintiff also argues that section 9543.1 is fundamentally unfair on its face because the majority of other states have a lower standard for obtaining DNA testing. The fact that other

---

[3] Although elsewhere in his responsive brief, Plaintiff cites Conway as being the only *appellate* court decision he was able to locate where the inmate was found to have met the threshold actual innocence standard, Plaintiff's argument overlooks the cases where the *trial* court found that the threshold had been met and ordered DNA testing. See Commonwealth v. Scarborough, 64 A.3d 602, 603 (Pa. 2013) (finding trial court's order granting Scarborough's motion for post-conviction DNA testing pursuant to section 9543.1 is a final order); Commonwealth v. Moto, 23 A.2d 989, 991 (Pa. 2011) (noting that Moto had been granted a new trial having successfully petitioned the trial court for DNA testing); Meyers v. Lawler, 2010 WL 3420059, at *2 (E.D. Pa. Aug. 26, 2010) (noting that Meyers' motion for DNA testing pursuant to section 9543.1 had been granted by the trial court); Gerber v. Pennsylvania Attorney General, 2010 WL 1754715, at *1 (M.D. Pa. April 28, 2010) (same); Lee v. Pennsylvania Bd. of Prob., 2010 WL 4861416, at *1 (E.D. Pa. Mar. 16, 2010) (same); Laughman v. Pennsylvania, 2007 WL 2345295, at *4 (M.D. Pa. Aug. 16, 2007) (same).

13

states impose a lesser burden on a petitioner seeking DNA testing, however, does not demonstrate that Pennsylvania's statute is fundamentally inadequate. Indeed, noting the states' greater flexibility in fashioning post-conviction procedures, the United States Supreme Court in Osborne recognized the varying standards imposed by the states without comment. Osborne, 557 U.S. at 63. More importantly, as previously discussed, the Supreme Court interpreted Alaska's post-conviction relief procedures as providing "access to evidence ... for those to seek to subject it to newly available DNA testing that will prove them to be *actually innocent,*" which seemingly parallels Pennsylvania's PCRA requirement. Id. at 64 (emphasis added). Because the Supreme Court has held that Alaska's standard comports with due process it would appear to preclude a finding that Pennsylvania's actual innocence standard does not.

Plaintiff's argument that § 9543.1 is unconstitutional as applied, is equally unavailing.[4] Having found that Pennsylvania's statutory post-conviction requirement that a criminal defendant demonstrate a prima facie case of actual innocence before he is entitled to DNA testing is facially constitutional, it necessarily follows that any court which applies that standard is acting constitutional as well.

### D. CONCLUSION

For the foregoing reasons, it is respectfully recommended that Defendant's Motion to Dismiss for Failure to State a Claim, ECF No. 34, be granted.

In accordance with the Magistrate Judges Act, 28 U.S.C. § 636(b)(1), and Local Rule 72.D.2, the parties are permitted to file written objections in accordance with the schedule

---

[4] The Court notes here that Plaintiff has not challenged the actual innocence standard as it was applied to him in his PCRA proceedings; nor could he as the claim would be barred under the *Rooker-Feldman* doctrine. See ECF No. 6, p. 2 ,¶ IV.C; p. 13, ¶ 78. See also FOCUS v. Allegheny Ctny. Court of Common Pleas, 75 F.3d 834, 840 (3d Cir. 1996). Rather, Plaintiff challenges the manner in which the standard is generally construed by the Pennsylvania courts. Although it is not at all clear that Plaintiff has standing to bring such a challenge, the Court need not reach the issue here.

14

established in the docket entry reflecting the filing of this Report and Recommendation. Failure to timely file objections will waive the right to appeal. Brightwell v. Lehman, 637 F.3d 187, 193 n. 7 (3d Cir. 2011). Any party opposing objections may file their response to the objections within fourteen (14) days thereafter in accordance with Local Civil Rule 72.D.2.

                Respectfully submitted,

                /s/ Maureen P. Kelly
                MAUREEN P. KELLY
                UNITED STATES MAGISTRATE JUDGE

Dated: August 13, 2014

cc:  The Honorable Terrence F. McVerry
   United States District Judge

   All Counsel of Record Via CM-ECF